(42 Misc. Rep. 381.)

### NICHOLS v. NICHOLS.

(Supreme Court, Special Term, New York County.  January, 1904.)

1. WILL—CONSTRUCTION—POWER OF SALE.

Testator left a widow and four sons, making two of them his executors and trustees.  He gave his residuary estate, except a farm, which he left to his wife, and which was not to be sold until her death, to his executors and trustees to manage and invest, with power to rent or sell all realty and personalty, and invest the proceeds and divide the income annually between the sons during their lives, with the provision that on the death of any one of them the trustees should within one year divide one-fourth of the principal between the son's heirs equally, together with the accrued interest.  He also provided that on the request of a majority of his sons the executors should sell any portion of the realty, except the farm, and invest the proceeds.  *Held*, that the executors had a valid power of sale, and that the only effect of the clause providing for a request of the majority of the sons was that, in case the executors should disagree as to a sale, the majority of the sons might compel them to act.

2. SAME—EXPRESS TRUST.

A provision in a will giving the executors and trustees the residuary estate to invest, manage, rent, or sell, and invest the proceeds and divide the income annually, constitutes a valid express trust under Laws 1896, p. 571, c. 547, § 76, subd. 3.

**3. SAME—ILLEGAL ACCUMULATION.**

A provision in a will that on the death of one of the 'beneficiaries the executors in one year therefrom should divide the portion of the principal held in trust for him among his heirs equally, with the accrued interest thereon, did not provide for an illegal accumulation of rents and profits.

**4. SAME—VESTED REMAINDERS.**

Where a will left certain property in trust for testator's sons, with the provision that on the death of any one of them one-fourth of the principal left in trust should, within a year, be divided between the deceased's heirs, such heirs took vested remainders, which vested in enjoyment within one year from the death of the life beneficiary, and that no contingent remainder on a term of years, which remainder could not vest in interest during two lives in being, was created.

**5. SAME—TRUSTEES—DISQUALIFICATION.**

The fact that the trustees under a will were also among the beneficiaries did not incapacitate them.

Action by William D. Nichols against Adelbert S. Nichols to construe a will. Judgment rendered.

S. Campbell, for plaintiff.

Goeller, Shaffer & Eisler, for defendant.

McCALL, J. This action is brought for the construction of the will of Harvey Nichols, ·deceased. The testator died on the 31st day of January, 1900, and left, him surviving, a widow and four sons, all parties to this action. The will, the provisions of which are brought into question, is dated September 17, 1886, and was duly admitted to probate in this county on the 30th day of July, 1900. The testator in his lifetime conveyed the property that he seeks to dispose of by the terms of the second clause of his will, and the legacy of $1,000 bequeathed to a granddaughter in the third clause lapsed on account of the death of said granddaughter before she arrived at the age of 21 years. The fourth clause is the one over which the actual controversy as between the respective parties to this action exists, and, set out in full, is as follows:

"Fourth. All the rest, residue and remainder of my estate, real and personal, including the farm and personal property of which my wife has the use during her life, and including also the $1,000 in case my said granddaughter, Grace M. Hughey, shall die before reaching the age of twenty-one years, I give, devise and bequeath as follows, viz.: My executors and trustees hereinafter named are to take possession of such residue and remainder at my decease and of the farm in Orange and the personal property thereon at the decease of my said wife, and of the said $1,000 given to my said granddaughter, Grace M. Hughey, and invest all moneys in good interest-bearing securities, and manage, rent or sell all real or personal property and invest the proceeds of such sale in good interest-bearing securities or in good productive real estate, and divide the rent, income and profits therefrom annually, equally between my four sons, William D., Adelbert S., Frank B. and Grant L. Nichols, for and during their natural lives, and in one year from the decease of any one of them the one-fourth part of said principal is to be equally divided between his heirs, together with accrued interest on said one-fourth part, to which said heirs I give, devise and bequeath the same forever."

By the fifth clause the testator provides (notwithstanding there is a full power to sell given the executors and trustees in the fourth clause) that:

"Whenever a majority of my sons then living shall request in writing of my said executors and trustees to sell any portion of the real estate of which I

may die seized, except the farm in Orange County, I will and direct that the said executors and trustees sell the same for the best possible price and invest the proceeds as hereinbefore provided, giving full power to sell and convey in fee."

The two sons, Adelbert S. and Grant L. Nichols, are then made executors and trustees. Against the fourth clause of this will practically all the shafts of the attack are leveled, and it is asserted, first, that by its terms it contravenes the statute which prohibits the suspension of the power of alienation; second, that it offends against chapter 46, p. 3806, Heydecker's Gen. Laws, § 36, which declares that a contingent remainder shall not be created on a term of years which remainder cannot vest during two lives in being; third, that it, again, is violative of same act in that it unlawfully provides for the accumulation of rents and profits of real property for the benefit of others than minors in being; fourth, that the trusts sought to be created are not contemplated by the statute, and hence void; and, fifth, it is pointed out that two of the beneficiaries are trustees, and it is claimed that the theory of our law opposes such a condition. It were well, perhaps, that the question of power of sale given to the executors and trustees by the will be treated at the outset and disposed of, and this is rendered particularly pertinent by the two provisions of the testator on this question, stated separately in two clauses of his will. By the terms of the fourth clause he gives all the residue of his property to his executors and trustees, they to take the same "and invest the money in good interest-bearing securities, and manage, rent, or sell all real and personal property," etc. In the very next clause—the fifth—he adds: "Whenever a majority of my sons living shall request my said executors and trustees to sell any portion of my real estate of which I may die seized, excepting the farm at Orange, I will and direct that the said executors and trustees sell the same for the best possible price and invest the proceeds as hereinbefore provided." There cannot be the slightest doubt that a power of sale is given the executors and trustees by the terms of the fourth clause of this will, and that the fifth clause in no manner conflicts with or defeats same, but was simply drawn to meet the exigency of the two trustees disagreeing on the question of exercising said power, in which event they could be forced to act by meeting the requirements of the fifth clause as to an expression of the majority of the sons living in favor of the sale; but in the event of the two executors' and trustees' minds meeting on the proposition of sale, the power of the fourth clause clothed them with the fullest and unrestricted capacity to act without further consent or aid on the part of any one. So we have it, at the outset, that the executors and trustees of and under the will are clothed with the unquestioned and undoubted power of sale. The question whether a valid express trust was, by the terms of this will, created must be clearly answered in the affirmative. Section 76 of the real property law (Laws 1896, p. 571, c. 547) sets forth the several purposes for which valid express trusts may be created, and subdivision 3 thereof provides, "To receive the rents and profits of real property, and apply them to the use of any person, during the life of that person," etc. The fourth clause of the testator's will directs his executors and trustees to "manage, rent or sell all real or personal

86 N.Y.S.—46

property," and, after a direction to invest, provides that· they must "divide the rents, income and profits therefrom annually" between the four sons during their natural lives. How, then, can it be claimed that these provisions do not fall flatly within the terms of subdivision 3 of this statute? Is it because the express words "to receive the rents" are not used, and hence it follows that there is no power to collect rents? There can be no force in such argument. It is not necessary, to constitute a valid trust, that it should be stated in the words of the statute; and when, as in the case at bar, there is an undisputed power to rent and divide the proceeds among designated beneficiaries, the power to collect the rents is clearly imported; and, furthermore, the power to receive the rents is necessarily implied from the duty enjoined upon them to apply them (Vernon v. Vernon, 53 N. Y. 351), and that there is a direction to apply them in the case at bar admits of no dispute in the light of the decision in Leggett v. Perkins, 2 N. Y. 297. On the question of illegal accumulation of interest of rents for others than infants, etc., this assertion can only find footing in the direction of the testator that "in one year from the decease of any one of them [meaning either of four sons] the one-fourth part is to be equally divided between his heirs, together with such accumulation on such one-fourth part," etc., and the contention of plaintiffs on this point must be held to be untenable. The testator has provided by the will what shall be done with all the rents or profits up to the time of the death of each or any of his sons, and then, when the time arrives for a division of the corpus of the estate, this phrase simply directs that the rents or profits earned by that fourth part, or any of said fourth part, intermediate the death of the life tenant and delivery of estate to remaindermen, should follow it to its rightful owner under the will. It might be said to be entirely superfluous, as it is simply expressing what the law would otherwise imply. Most certainly it would be a strained reading of the law that would invalidate such a proposition.

This brings us now to a consideration of the question, what is the nature of the estate created by the terms of the fourth clause of this will? And it is very clear to my mind that it does not create a contingent remainder, or other estate limited on a term of years, but it does establish vested remainders limited to take on the determination of respective trust estates. Of course, the words "in one year" have some significance, but it seems to me they must be construed to mean "within one year," and that thereby the testator desired to express his intention that the time when these different remaindermen would come into actual possession, enjoyment, and use of their estates should not be postponed beyond one year from the date of death of a life tenant, and in no sense can they be taken to work any enlargement of the time of payment, but must be accepted as used by way of admonition and restriction. Manice v. Manice, 43 N. Y. 382.

As to the question raised that two of the trustees are also beneficiaries under the trusts created, and that such a condition is prohibited by the provision of law which prevents the uniting of the two roles of beneficiary and trustee in the same person, on the ground of incompatibility, the point made is without force under the state of facts existing in the case at bar, and such a condition under the given circum-

stances is permissible. Rogers v. Rogers, 111 N. Y. 228, 18 N. E. 636.

This leaves now as the only remaining question the point which is most strongly urged by the plaintiffs; that is, does the fourth clause of this will, by its terms, unlawfully suspend the power of alienation? We have found and heretofore stated that by the will there was created a valid express trust; that under the terms of the will the executors and trustees were clothed with an absolute power of sale. Keeping in mind these conditions, the testamentary scheme of the testator can clearly be determined to be: First. The creation of a life estate in Orange county farm in his wife's favor. Second. The creation of an additional life estate in one-fourth part of his entire estate (including the farm after determination of the first, or wife's, estate) for the life of each of his sons. Third. A remainder in each one-fourth in the heirs of the son, the heirs of said son being also entitled to the income of said one-fourth accruing after the death of the son and up to time of the actual transfer of their interests. Fourth. A limitation upon his executors and trustees, compelling them to actually transfer such heirs' interests within one year after the death of their father. There is nothing illegal in such a scheme; nor against any portion of the estate can it be advanced that the power of alienation has been suspended for a period exceeding two lives in being. The sons are clearly tenants in common, each being entitled to a life estate in an undivided fourth part of the real estate, and final disposition of each undivided one-fourth part cannot be held for a longer period than that which is measured by the life of the mother and one son. Judgment shall therefore be rendered accordingly.

Judgment accordingly.