## DETERMINED IN THE

# FIRST DEPARTMENT,

### AT

# GENERAL TERM,

### December, 1880.

---

CHRISTOPHER R. ROBERT, EXECUTOR, &c. OF CHRIS-
TOPHER R. ROBERT, DECEASED, RESPONDENT, v. JANE
R. CORNING AND FREDERICK ROBERT, APPELLANTS,
AND THE TRUSTEES OF ROBERT COLLEGE AND OTH-
ERS, RESPONDENTS.

*Will—when a fee is not vested in the executors by implication—validity of a pro-
vision as to the deduction of advancements.*

A testator by his will directed his executor to sell and dispose of all the rest,
residue and remainder of his estate, real and personal, "such portion of
the said real estate as may be in the State of New York to be sold at public
sale in the city of New York, notice thereof having first been given of the
time and place of sale for three successive weeks in four of the daily news-
papers of the said city," and to dispose of the proceeds as therein directed.
He also provided that "in view of the present depreciation in real estate,
it is my will that my executors, or such of them as shall qualify, exercise
their discretion as to the time to sell the same, not longer than three years
after my decease. . . . All rents, income or profits from my estate, un-
til it is finally distributed, I direct my said executors to divide semi-annu-
ally among those to whom the bequests are made, in the proportion the
amount of the said bequests bears to the said net income or profit."
*Held,* that the direction to divide the rents, income and profits of the estate

did not vest a fee in the executors by implication, and that the direction. as to the time and mode of sale created no unlawful suspension of the· power of alienation.

The testator directed that all moneys or indebtedness which should appear· upon any inventory or ledger or books of account, kept by him or under his direction, charged as due to him from any or either of his children, or from Robert College (a corporation), and as outstanding and unsettled accounts at the time of his decease, should be considered as forming part of his estate, and that a discharge from such indebtedness by his executors should be deemed and taken as an equivalent to an equal amount paid to· such child or college on account of his or its share.

*Held*, that this was a lawful and valid direction.

APPEAL from a judgment entered upon the trial of this action at Special Term. The action was brought to procure a judicial construction of the will of Christopher R. Robert, deceased.

The will contained, among others, the following provisions :

" *Fourthly.*—All the rest, residue and remainder of my estate,. real and personal, whatsoever or wheresoever, as well that I now have as that which I may hereafter acquire and die possessed of or entitled to (except such as is herein otherwise disposed of), I order and direct my executors hereinafter named, or such of them as shall qualify and act, the survivors and survivor of them, to sell and dispose of as follows, namely : such portion of the said real estate as may be in the State of New York to be sold at public sale in the city of New York, notice thereof having first been given of the time and place of sale for three successive weeks in four of the daily newspapers of the said city, giving a full, proper description of the said real estate ; and the real estate in other places to be sold at such places and in such manner as my said executors deem best ; and after disposing of my said real and personal property, and deducting from the proceeds thereof all necessary expenses and charges, also the thirty thousand dollars bequeathed my wife, as before-mentioned, to divide the remainder into fifty equal parts. . . . .

" And upon such division to pay over to ' The Trustees of Robert College of Constantinople' ten of such equal shares, which, with the other bequests herein made to the said trustees of said college, are for the endowment fund of the said college ; and the money derived from the said bequests is to be invested in bond

and mortgage on improved productive real property in fee simple, in the city of New York or Brooklyn, worth double the amount loaned, at a low valuation,—the income only to be used for the general uses and purposes of the said college.

"In case the said college shall be discontinued, then I will that the said bequest, as well as any other bequests herein made to the said college, shall be applied by the said trustees of said college in such manner as they may deem best for the general purposes of Evangelical and Protestant education among any of the nationalities of the Turkish Empire. . . . .

"*Sixthly.*—All moneys or indebtedness, which shall appear upon any inventory or ledger or books of account, kept by me, or under my direction, charged as due to me from any or either of my said children, or Robert College of Constantinople, during my life-time, and as an outstanding or unsettled account at the time of my decease, whether with or without security, shall be considered as forming part of my estate mentioned or referred to in the fourth article of this my will, and a discharge from such indebtedness by my executors shall be deemed and taken as an equivalent to an equal amount paid such college, child or children, on account of its, his, her, or their share and portion under this my will.

"And my executors are hereby directed to deduct the amount of such indebtedness from such respective share or portion, but no interest is to be charged upon or added to any such indebtedness, except in case a bond, note, or other obligation securing such indebtedness be found among my assets, upon which said bond, note or obligation interest has been paid or charged, in which case the said indebtedness shall continue to be charged with interest. . . .

"*Eighthly.*—In view of the present great depression in real estate, it is my will that my executors, or such of them as shall qualify, exercise their discretion as to the time to sell the same,— not longer than three years after my decease, hereby empowering them to give full and ample titles to the purchasers thereof. . .

"All rents, income or profits from any estate, until it is finally distributed, I direct my said executors to divide semi-annually among those to whom the bequests are made, in the proportion that

the amount of the said bequest bears to the said net income or profit."

*Porter, Lowery, Soren & Stone,* for the appellant Corning.

*Gray & Davenport,* for the appellant Robert.

*James W. Gerard,* for the plaintiff, respondent.

*Thomas G. Shearman,* for the Robert College, defendant and respondent.

*J. N. Platt,* for the defendants Howell W. Robert and Anna Maria Robert.

DAVIS, P. J. :

Some of the questions involved in this case are by no means free from doubt; but as they will doubtless be finally determined by the court of last resort, we think it sufficient to do little more than state the conclusions at which we have arrived.

The principal question arises upon the provisions of the will disposing of the residuary estate of the testator. It is claimed by the appellants that those provisions not only confer upon the executors a power of sale of the real estate of the testator not otherwise disposed of by his will, but that by necessary implication of law, they devise to the executors the fee of the land until the power shall be executed in the manner prescribed by the will.

The will very clearly creates a power of sale, and, in respect of the real estate in the State of New York, it imposes some restrictions upon the mode of executing the power. It also confers upon the trustees a discretion as to the time of making such sale, which extends through a period of three years after the death of the testator. The restriction as to the mode is found in the clause requiring the lands "to be sold at public sale in the city of New York, notice having first been given of the time and place of sale for three successive weeks, in four of the daily newspapers of the said city."

The will very clearly gives authority to the executors, in view of

the then present depression in real estate, to postpone the sale in their discretion for a period of time not exceeding three years beyond the date of the testator's death. Such postponement was not imperative, but was left altogether to the discretion of the executors; and the power of sale, if valid, would be well executed, if a sale had been made immediately after the executors had qualified, upon giving the prescribed notice, or at any other time within the limit of three years. It is insisted that if the executors took a fee under the will, the conferring of authority to postpone the sale for three years in their discretion, created a state of things by which the power of alienation might be suspended for a period not limited to two lives in being, and that therefore the provisions of the will are void within the rule laid down in *Hawley* v. *James* (16 Wend., 134, 171, 172). But, to give weight to this objection, it is necessary first to establish that the executors were by the will vested with the fee of the real estate. This is claimed to be done by the following provision of the will : " All rents, income or profits from my estate until it is finally distributed I direct my said executors to divide semi-annually among those to whom the bequests are made in the proportion that the amount of such bequest bears to the said net income or profit."

This provision, although in terms broad enough to embrace all the estate of the testator, was we think, intended to apply only to so much of the estate as is embraced within the provisions of the residuary clause.

It is argued that under the authorities, this direction to distribute rents income and profits includes the power to exercise such rights of dominion over the real estate as necessarily requires that the fee shall be vested in the executors. Wherever that is the case the fee does so vest, as was settled in *Brewster* v. *Striker* (2 Comst., 19), *Tobias* v. *Ketchum* (32 N. Y., 319), *Smith* v. *Scholtz* (68 Id., 41), *Garvey* v. *McDevitt* (72 Id., 563), and cases there cited. But in each of these cases the will, in express terms, conferred authority and directed the performance of duties greater than those embraced in the will before us; and they were authorities and duties which could not be effectively exercised without the fee. In this case no authority or direction to rent or lease the

property, to insure or keep in repair, or to pay rates and taxes, is expressly given. It is a mere naked direction to divide rents, income or profits; and it was doubtless given to express the intention of the testator, that the beneficiaries under the residuary clause should be entitled to the rents, income and profits accruing prior to the time of making the sale. A power given to executors to collect and divide rents of real estate, does not, in our judgment, necessarily imply a devise of the fee to them even where it is accompanied with a power of sale. The title of land may be vested by law in one party, and the authority to collect rents for some limited period be given to another, without at all affecting the fee, or necessarily preventing the exercise of the power of alienation.

As this provision does not impose upon the executors the duty to rent the lands and to collect rents it may perhaps be susceptible of the construction that they are to distribute only such rents as may, before the sale, happen to come into their hands.

In *Post* v. *Hover* (33 N. Y., 593), the court, speaking of that case, say : " Ample powers of management and a right to receive the rents and profits are indeed given ; but these duties could be very well executed under a trust power . . . . To devise an estate by implication, there must be such a strong probability of an intention to give one, that the contrary cannot be supposed." (Jarman on Wills, 465.) Devises by implication are sustainable only upon the principle of carrying into effect the intention of the testator ; and unless it appears, upon an examination of the whole will, that such must have been the intention, there is no devise by implication. (*Rathbone* v. *Dyckman*, 3 Paige, 9.)

In that case it was held that the will conferred a trust power of management, the estate vesting, in the meantime in the grandchildren under an express devise to them; and the rule for the construction of such wills is given by Denio, Ch. J., in these words: " If the language of a deed or will is susceptible of two constructions, and by adopting one of them it would be unlawful, while if the other were followed it would be valid, the latter interpretation should be given to it, *ut res magis valeat quam pereat.*"

It was upon the authority of this case that the court below held that the will before us did not devise the fee to the executors, of the lands in this State, embraced in the residuary clause. With much hesitation we have reached the same conclusion.

The sixth provision of the will was, we think, only intended by the testator to determine what kinds of indebtedness of his children, and of the Robert College, should be treated as advances. In substance, it directs that none which does not appear upon the inventory or ledger, or books of account kept by him, or under his direction, charged as due to him, shall be considered as an indebtedness forming part of his estate. Or, in other words, he meant to say that only advances or actual indebtedness which had taken the forms prescribed, should be treated as advances to be deducted from the share or portion of his several legatees under the will. The indebtedness must be actual, and such as would form by reason of its character, a portion of the personal estate which could be collected by the executors; an l where it is of that character and appears in the manner prescribed, he directs that it be deducted from the share given by the residuary clause as a mode of producing equality among the objects of his bounty. We are unable to perceive that any serious question affecting the validity of the will can arise upon this provision.

It was held by the court below, that the question whether the bequest to Robert College is valid or not, is fully disposed of by the decision of the Court of Appeals in the case of *Wetmore* v. *Parker* (56 N. Y., 450). Our impression is that this position is sustainable upon that authority.

It was of course error for the court below to find, as a legal conclusion, that the residuary real estate of the testator descended to the " *devisees* " named in his will upon his death, subject to the powers therein conferred upon his executors. The devisees could take nothing by descent. The real estate descended to the heirs-at-law of the testator, subject to such powers; and in this case the words " devisees " and " heirs-at-law " are not interchangeable terms. This conclusion, we think, was an accidental mistake in phraseology, which would at once have been corrected by the court below, on suggestion or motion. We shall direct this correction, in order that

there may be no embarrassment hereafter on a merely technical error.

No appeal seems to have been taken from the allowances made, although they exceeded the statutory limitation, and so far as the excess is concerned, were given without authority.

· The judgment should be affirmed, with costs of the appeal to all parties out of the fund.

BARRETT, J. :

I also agree to the affirmance of this judgment with much hesitation. If the language used by ANDREWS, J., in *Vernon* v. *Vernon* (53 N. Y., 351), be applicable to the terms of the present will, it is difficult to see why the executors did not take the legal title to the realty. I am inclined to think, however, that that case is distinguishable from the present.

The effect there given to the provision for the payment of the annuity by the executors out of the rents was not to invalidate the will ; it may be that the court deemed the will susceptible of two constructions, and adopted that which, without invalidating the will, seemed most in harmony with the testator's intention.

There were, also, in the earlier part of the will, words expressive of a purpose to vest the legal title in the executors.

If we are in error in this view of the case, the court above can correct us. The other questions presented, too, are by no means free from difficulty ; but upon the whole, I am inclined to concur in the conclusions arrived at by the presiding justice.

BRADY, J., concurred.

Judgment affirmed, with costs of the appeal to all parties out of the fund.